IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DONNA F. REDMON,

    Plaintiff,

v.                                                          No. 04-2449 B

NORMAN MINETA, Secretary,
United States Department of Transportation

    Defendant.

_____

ORDER ON DEFENDANT'S MOTION TO DISMISS AND/OR
FOR SUMMARY JUDGMENT

_____

Plaintiff, Donna F. Redmon, brings this action against her employer, Norman Mineta, Secretary, United States Department of Transportation, alleging discrimination on the basis of sex, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII").  Before the Court is the motion of the Defendant to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively, for summary judgement under Rule 56.  For the reasons set forth below, Defendant's motion is GRANTED.

BACKGROUND

The following facts are undisputed unless noted.[1]  Redmon is a female Air Traffic Control

---

[1]Local Rule 7.2(d)(3) provides that

>   the opponent of a motion for summary judgment who disputes any of the
>   material facts upon which the proponent has relied . . . shall respond to the

1

Specialist ("ATCS") employed by the Federal Aviation Administration ("FAA"), an agency administered by the United States Department of Transportation. (Compl. ¶ 5, 6.) She was hired by the FAA in 1991 and has since been employed at the Memphis Air Traffic Control Facility. (Dep. Donna Redmon ("Redmon Dep.") at 14, 26.) Prior to her employment with the FAA, Redmon served as an Air Traffic Controller for the United States Navy for thirteen years. (Compl. ¶ 5.)

In July 2001, Redmon began a relationship with a co-worker, Joseph House, which continued until January 2003, when House ended it. (Redmon Dep. at 38; 46-47.) However, Redmon and House continued to see each other and have sexual relations until May 15, 2003. (Id. at 51-52.) Following the conclusion of their relationship, Redmon continued to attempt to discuss the matter with House despite his reluctance to talk about it. (Id. at 106.) During and after this period, Redmon and House more often than not worked together in the control room on the same shift. (Id. at 68-69.) On August 8, 2003, while both Redmon and House were controlling aircraft on the midnight shift, they began arguing regarding their former relationship. (Id. at 63-70.) During the course of the argument, Redmon struck House on his upper thigh and called him a "f***ing a**hole." (Id. at 70.) Redmon maintains that her conduct was an attempt to get his attention and was not intended to cause injury. (Compl. ¶ 7.) House does not contend that he was physically injured as a result of Redmon striking him. Immediately following the incident, House complained to the area manager, Dan Alan.

---

proponent's number designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

LR 7.2(d)(3), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. On November 22, 2005 the Plaintiff filed her Statement of Outstanding Issues of Material Facts offering three legal conclusions which she contends to be disputed. (Pl.'s Statement Outstanding Issues Mat. Fact ("Pl.'s Facts") at 1.) However, because Redmon did not respond in opposition to the facts submitted by the Defendant as provided by Local Rule 7.2(d)(3), the Court must assume that those facts are undisputed.

(Redmon Dep. at 71.)

On August 14, 2003, Redmon was "temporarily" reassigned to the Quality Assurance Office pending an investigation into the August 8, 2003 incident. (Redmon Dep. Ex. 3.) Subsequently, on October 6, 2003, she received notice from James M. Kyle, the East Area Operations Supervisor, of a proposed fourteen-day suspension as discipline for the August 8, 2003 incident as well as alleged physical conduct by Redmon on August 7, 2003.[2] (Redmon Dep. Ex. 4.) As invited in the October 6, 2003 notice[3], Redmon appealed the proposed discipline on October 22, 2003. (Redmon Dep. Ex. 5; Compl. ¶ 9.) In her appeal, Plaintiff acknowledged the above described conduct on August 8, 2003, but maintained that the proposed punishment was significantly more harsh than that received by male ATCSs alleged to have been involved in similar physical incidents in the control room.[4] (Id. at 3.) After considering Redmon's response, Kyle issued a decision on December 3, 2003

---

[2] Kyle's letter also noted an allegation by House that Redmon intentionally kicked or pushed a chair into the back of his legs as he was walking away from a radar position on August 7, 2003. (Redmon Dep. Ex. 4.) However, upon review of Redmon's response to the proposed suspension and further investigation that she requested, Kyle determined that allegations may have reflected an accident rather than intentional conduct and withdrew any discipline for that event. (Redmon Dep. Ex. 6.)

[3] Kyle's October 6, 2003 notice of proposed action stated the following:
> You may reply to this proposal orally, in writing, or both to me. You may submit all affidavits and other documentary evidence in support of your reply. You will be allowed 15 calendar days from the date you receive this letter to submit your reply. Full consideration will be given to any reply you choose to submit. If otherwise in a duty status, you and your Union representative, upon request, shall be granted a reasonable amount of duty and official time of up to 8 hours to prepare and present a reply to this proposed action. You have the right to be represented by a designated representative of your choice.

(Redmon Dep. Ex. 4 at 4.)

[4] Specifically, Redmon alleged that on, July 11, 2003, a confrontation erupted between two male ATCSs of such intensity that the Area Manager immediately asked one of the men to leave the control room until he was able to calm down. (Redmon Dep. Ex. 5 at 3.) Plaintiff also alleged that an incident occurred in the Central Area in which a "[male] controller was flipped backward in his chair after harassing another controller and his trainee." (Id.) She further noted that several female employees had received harassing letters from a male employee. (Id.)

imposing a seven-day suspension for her conduct on August 8, 2003. (Redmon Dep. Ex. 6.) As a result of the decision, Redmon was suspended without pay from December 8, 2003 through December 15, 2003. (Id. at 000019-20..) At the end of her suspension, Plaintiff was still not allowed to return to the control room. (Compl. ¶ 9.) Kyle's letter informed her that, if she disagreed with his decision, she had the right to file a grievance pursuant to Article 9, Section 8 of the collective bargaining agreement in place between the FAA and the National Air Traffic Controllers Association ("CBA"), the union representing Redmon and other federal ATCS. (Id.; Decl. Cecil Hoyer ("Hoyer Decl.") Ex. A at 134-39.) Kyle informed Redmon that the any grievance filed by her would begin with Step 2 of the negotiated grievance procedure outlined in the CBA. Pursuant to the Step 2, Plaintiff was required to submit her grievance in writing within 20 days of the date of the decision. (Hoyer Decl. Ex. A at 135.)

      Consistent with Step 2 of the CBA, Redmon's union representative filed a formal grievance on Plaintiff's behalf on December 23, 2003. (Redmon Dep. Ex. 9.) A formal grievance presentation was held on January 9, 2004, during which Redmon maintained that she had been treated unfairly in response to her conduct on August 8, 2003. (Redmon Dep. Ex. 11 at 1.) Specifically, she argued that a seven-day suspension without pay in addition to her reassignment to the Quality Assurance Office, which required that she train, certify and maintain occupational currency in a new area of specialization and face a pass/fail situation should she not certify, reflected "punitive" actions by management. (Id. at 1-2.) Redmon further alleged that her treatment was not in accord with disciplinary action taken for similar offenses, particularly those involving male coworkers. (Id. at 2.) In her grievance, Redmon sought removal of the suspension from all personnel records and a restoration of pay and benefits. (Id. at 3.) Following consideration of Redmon's presentation, her

4

grievance was denied by Cecil A. Hoyer, the Air Traffic Manager of Memphis Center, ZME-1. (Id. at 4.) Pursuant to Step 3 of Article 9, Section 8 of the CBA, Plaintiff demanded that the union pursue the matter through arbitration, but the union declined. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss Summ. J. ("Pl.'s Resp.") Attachment 3 at 4.)

On February 17, 2004, Redmon contacted Cynthia Marzette, an internal Equal Employment Opportunity ("EEO") counselor for the FAA, and filed a complaint alleging harassment based on sex and hostile work environment. (Decl. Cynthia Marzette Miller ("Miller Decl.") Ex. A.) On Redmon's behalf, Marzette attempted an informal resolution with Hoyer which was unsuccessful. (Id. at 000027.) Plaintiff subsequently filed a written complaint through the EEO office on or about March 9, 2004.[5] (Redmon Dep. Ex. 12.) In her complaint, Redmon alleged discrimination on the basis of sex and retaliation. (Id. at 000034.) On March 22, 2004, the EEO complaint was denied, pursuant to 29 C.F.R. § 1614.107(a)(8)[6], because Redmon "elect[ed] to pursue the grievance process rather than the EEO process." (Redmon Dep. Ex. 14 at 2.) The letter also informed Plaintiff of her right to appeal the decision within thirty days to the Equal Employment Opportunity Commission as well as her right to file a civil suit in federal District Court within ninety days of the decision. (Id.) Redmon subsequently commenced this action on June 15, 2004 alleging discrimination in the terms and conditions of her employment on the basis of sex, including hostile work environment, and

---

[5] Defendant's Statement of Material Facts in Support of Motion for Summary Judgment states that Plaintiff filed her EEO complaint on March 5, 2004, the date the complaint was signed by Redmon. (Def.'s Mat. Facts ¶ 11.) However, in response to her complaint, the EEO noted that the complaint was filed on March 9, 2004. (Redmon Dep. Ex. 14 at 000007.)

[6] 29 C.F.R. § 1614.107(a)(8) provides that "[p]rior to a request for a hearing, the agency shall dismiss an entire complaint where the complainant has raised the matter in a negotiated grievance procedure that permits allegations of discrimination or in an appeal to the Merit Systems Protection Board and Sections 1614.301 and 1614.302 indicates that the complainant has elected to pursue the non-EEO process." 29 C.F.R. § 1614.107(a)(8) (internal quotations omitted).

reprisal for protected activity.

## ANALYSIS

I. Subject Matter Jurisdiction

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit." Nat'l Rifle Ass'n of America v. Magaw, 132 F.3d 272, 279 (6th Cir.1997). Accordingly, the Court will first address the Defendant's jurisdictional challenge under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) permits dismissal of a complaint for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). "When the defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction and the court may resolve factual disputes." Robinson v. Ohio, Dep't of Dev., 69 F.Appx. 204, 205 (6th Cir. 2003) (citing Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986)).

A. Exhaustion of Administrative Remedies

The Defendant first asserts that this Court lacks jurisdiction to consider Plaintiff's Title VII claims because Redmon did not timely exhaust her administrative remedies. "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" McFarland v. Henderson, 307 F.3d 402, 406 (6th Cir.2002) (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 833, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Accordingly, prior to bringing suit under Title VII, a federal government employee must first timely exhaust all administrative remedies. Benford v. Frank, 943 F.2d 609, 612 (6th Cir.1991) ("The right to bring an action under Title VII regarding equal employment in the federal government is predicated upon the timely exhaustion of administrative remedies ..."). Specifically, federal regulations require that

the aggrieved employee first consult with a counselor at the relevant agency's EEO Office within 45 days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved after a mandatory counseling period, the employee may then file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice"). Id. at § 1614.106(a), (b). Upon notice of a final agency decision, the employee may file a civil action within 90 days of the notice or after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. 42 U.S.C. § 2000e-16(c). Despite the statutory rigidity, Title VII's exhaustion requirements "are subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

Redmon first contacted an EEO counselor regarding her allegations of discrimination on February 17, 2004. (Miller Decl. Ex. A.) The Defendant contends that, because she received notice of the FAA's allegedly discriminatory discipline proposal more than 45 days before this date her claim was not timely filed. (Mem. Supp. Def.'s Mot. Dismiss Summ. J. ("Def.'s Mot.") at 5-6.) Plaintiff does not assert in response to the Defendant's motion that the time limitations should be subject to tolling or waiver. Zipes, 455 U.S. at 393, 102 S.Ct. 1127. Nor does she allege that acts which occurred prior to the 45-day period should be actionable as part of a continuing violation. See Burzynski v. Cohen, 264 F.3d 611, 617-18 (6th Cir. 2001) (noting that pursuant to the continuing violations doctrine, discriminatory incidents which occur beyond the limitations period may be brought by a plaintiff who "challenges not just one incident . . . but an unlawful practice that continues into the limitations period."). Rather Redmon insists that because she complied with the mandatory pre-complaint procedures by consulting a counselor and filing her complaint in this Court

within ninety days after receiving notice of the EEO dismissal of her claim, administrative remedies were timely exhausted and subject matter jurisdiction in this Court is proper. Her response does not address whether her initial complaint to the EEO counselor was made within 45 days of the alleged discriminatory act as required by the federal regulations. See 29 C.F.R. § 1614.105(a)(1).

In the instant action, Redmon presents claims against the Defendant for both retaliation and hostile work environment.[7] Her retaliation claim is based on one discrete act, namely, the Defendant's removal of Redmon from her position as an ATCS. (Pl.'s Resp. at 14-15.) In response to the Defendant's motion, Plaintiff alleges that, subsequent to filing a grievance with the Union and an EEO complaint, she suffered an adverse employment action when she was removed from her position as an ATCS. (Pl.'s Resp. at 14-15.) Without offering a specific date on which it occurred, she further describes the adverse action as that when she was "removed from her air traffic duties and placed in quality assurance to diffuse the situation." (Id. at 15.) Redmon was first removed from her position and reassigned to the Quality Assurance Office on August 14, 2003. (Redmon Dep. Ex. 3.) While the notice of her assignment indicated that it was temporary, Redmon was not allowed to return to the control room after this date. Even if the action alleged on August 14, 2003 was within the 45-day period preceding Redmon's complaint to an EEO counselor, it cannot be the basis of a retaliation claim because it occurred prior to her engagement in protected activity. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000) (noting that a prima facie case of retaliation requires a showing that the employer took an adverse employment action *after* the plaintiff engaged in activity protected by Title VII.)

---

[7] Plaintiff's complaint alleges a myriad of discrimination claims, however, in response to the Defendant's motion for summary judgment, she responds only to claims of discrimination based on hostile work environment and retaliation.

Redmon has not offered any evidence of an adverse employment action in the form of removal or reassignment which occurred subsequent to her filing of an EEO complaint on March 5, 2004. Following her Union grievance filing, the only activity cited by Redmon which could form the basis of her claim was the January 23, 2004 denial of her formal grievance. A grievance denial can support a retaliation claim where it is the result of retaliatory animus. Fasold v. Justice, 409 F.3d 178, 189 (3rd Cir. 2005). However, Redmon has not alleged that the denial of her grievance was retaliatory, but rather maintains that her removal from her position, which the denial affirmed, was the retaliatory act. (Pl.'s Resp. at 14-15.)

To the extent that Redmon contends that, because it finalized the decision, the denial of her grievance was the date that her unlawful removal occurred, that argument must fail. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 110, 122 S.Ct. 2061, 2073 (2002). In Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229, 234, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the United States Supreme Court considered whether an employee's utilization of a grievance process would, in essence, toll the occurrence of a discrete act to the date of the final grievance decision. Electrical Workers, 429 U.S. at 234. There, the plaintiff employee argued that because his discharge was "tentative" and "nonfinal" until the grievance and arbitration procedure ended, that later date, rather than the date of his termination should be utilized for determining the timeliness of his claim. (Id.) Noting that no further action by management would have been required to finalize the plaintiff's discharge had she not elected to pursue the grievance procedures, the Supreme Court rejected the plaintiff's argument and held that it was the date of the discharge, not that of the grievance decision, on which the discriminatory act occurred. (Id. at 234-35.) In the instant matter,

Redmon was removed from her position as an ATCS on August 14, 2003. There is no indication in the record that, had she chosen not to pursue the grievance procedures, further action would have been required to effectuate the assignment. Rather, by all accounts, Plaintiff was reassigned to the Quality Assurance Office on that date. Accordingly, the date of the occurrence of the alleged discriminatory removal was August 14, 2003. Because August 14, 2003 is not within the 45-day period prior to her consultation with an EEO counselor, and Redmon has alleged no other retaliatory act within the time limitation, her retaliation claim is untimely and must be dismissed.[8]

While Plaintiff may not maintain a claim of retaliation based on discrete acts which occurred more than 45-days before her February 17, 2004 EEO complaint, events prior to this date may be actionable as part of her hostile work environment claim. In National Railroad Passenger Corporation v. Morgan, the United States Supreme Court recognized that "[h]ostile work environment claims are different in kind from discrete acts" because the "very nature" of a hostile work environment "involves repeated conduct." National Railroad Passenger Corporation, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073 (2002). In contrast to discrete acts, the unlawful employment practice comprising a hostile work environment claim "occurs over a series of days or perhaps years and . . . a single act of harassment may not be actionable on its own." Id. at 115, 122 S.Ct. at 2073. Accordingly, the Supreme Court concluded that so long as "an act contributing to the claim occurs

---

[8] Even if the Court were to conclude that Redmon's removal from the control room did not occur until Kyle's decision was final and the suspension was enforced, her retaliation claim suffers the same fate. Plaintiff received notice of Kyle's proposed 14-day suspension on October 6, 2003. (Redmon Dep. Ex. 4.) Following her appeal on October 22, 2003, Kyle issued an affirmation of his decision regarding the August 8, 2003 incident imposing a seven-day suspension as discipline for Redmon's conduct. (Redmon Dep. Ex. 5; Redmon Dep. Ex. 6 at 000019-20.) She subsequently served the suspension from December 8, 2003 to December 15, 2003. (Compl. ¶ 9.) Following the suspension, Plaintiff was not permitted to return to the control room. However, because even this later date is not within the 45-day period before her complaint to the EEO counselor, it cannot form the basis of a timely retaliation claim.

within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117, 122 S.Ct. at 2074; see also McFarland, 307 F.3d at 408 ("A hostile work environment claim thus has an effect similar to that of a continuing violation composed of discrete acts in that the existence of the hostile work environment within the 45-day time limit causes the actionable violation to encompass conduct that occurred outside of the limit.").

Redmon's EEO complaint was therefore timely initiated if it was based upon a hostile work environment that existed less than 45 days before February 17, 2004. The hostile treatment in this case is alleged to have begun on August 8, 2003 following the incident with House in the control room. Redmon perceived that "no one would listen to her side of the argument" on August 8, 2003 and that the male members of her shift sided with House in its aftermath. (Redmon Dep. Ex. 12 at 000036.) Following the control room incident Plaintiff alleges that she was treated differently than male employees when she was removed from the control room on August 14, 2003 and notified of a proposed suspension on October 6, 2003. (Id.) She subsequently served her suspension in December 2003. (Redmon Dep. Ex. 11 at 000016.) In addition, Plaintiff has offered evidence of sexual jokes; jokes regarding her relationship with House; offensive comments; offensive magazines in the workplace; and instances of inappropriate touching. (Pl.'s Resp. Ex. 14 at 14 (jokes); Ex. 15 at 17 (jokes regarding House and Redmon), 35-36 (offensive comments), and 18 (inappropriate touching); Ex. 13 at 46 (magazines).) However, Plaintiff has not alleged the dates on which any of these events occurred and from which this Court could conclude that a hostile work environment did exist less than 45 days before February 17, 2004. Because Plaintiff does not submit any evidence or contention in her response to the instant motion that an act contributing to her hostile

work environment occurred less than 45 days prior to her consultation with an EEO counselor, her claim must be dismissed.  See Robinson, 69 F.Appx. at 205 (noting that the plaintiff bears the burden of proving jurisdiction upon a challenge by the defendant.)

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's motion and DISMISSES Plaintiff's claims pursuant to Title VII.  Accordingly, the Clerk of Court is directed to enter judgment in favor of the Defendant.

**IT IS SO ORDERED** this 3rd day of February, 2006.

        s/ J. Daniel Breen
        UNITED STATES DISTRICT JUDGE